■ In the Matter of ALEXANDER H. MASSEY, Petitioner, v GORDON M. AMBACH, as Commissioner of Education, et al., Respondents.—Harvey, J. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law

§ 6510-a [4]) to review a determination of respondent Commissioner of Education which revoked petitioner's license to practice medicine in New York.

Petitioner was licensed to practice medicine in this State in 1965. He specialized in obstetrics and gynecology. In 1979, after answering a newspaper advertisement, he secured part-time employment with the Manhattan Center for Research into Stress and Pain Control (hereinafter the Center). Petitioner testified that he was informed that the Center was engaged in a stress and pain research project sponsored by the Lemmon Company and that the project involved the use of methaqualone (hereinafter Quaalude). Petitioner had no formal training in the treatment of stress and no prior experience with Quaalude. Although the Center had promised to provide training, none was forthcoming. Nevertheless, petitioner worked at the Center on a part-time basis until September 1980. During that time, he wrote 521 prescriptions for Quaalude during 527 patient visits.

Shortly after petitioner left the Center, the Center was investigated by the Federal Drug Enforcement Administration and the United States Attorney's Office for the Southern District of New York. The Center's principals were eventually subjected to criminal prosecution. For his role in the Center, the State Board for Professional Medical Conduct (hereinafter Board) charged petitioner with 18 specifications of practicing the profession fraudulently, 18 specifications of practicing the profession with gross negligence, one specification of practicing with negligence on more than one occasion, two specifications of failing to maintain proper records, one specification of engaging in conduct in the practice of medicine which evidences moral unfitness to practice medicine, and one specification of willfully failing to comply with substantial provisions of law. A joint hearing was conducted to consider the charges against petitioner and seven other physicians who had worked at the Center. The Board concluded that the Center existed solely for the purpose of facilitating a massive distribution of Quaalude, that Quaalude was a highly abused street drug, and that the physicians should have known about its potential for abuse and dependence. Specific findings were made with regard to petitioner and the Board concluded that he was guilty of the charges filed against him. The Board recommended, *inter alia,* that petitioner's license be revoked. Respondent Commissioner of Education ultimately issued an order revoking petitioner's license to practice medicine. This proceeding followed.

Petitioner contends that the findings and determination were not supported by sufficient evidence. We cannot agree. The Board* reviewed the charts of 12 of petitioner's patients at the Center. Although petitioner had prescribed Quaalude to all 12 patients, the Board found no medical reason for the prescriptions in any of the cases. Further, petitioner kept incomplete records regarding these individuals and he failed to conduct a detailed drug history or inquire completely into the cause of each patient's purported stress and insomnia. The Board considered the fact that petitioner had no prior experience with Quaalude and did little to inform himself about the drug. He did not receive the training which the Center had promised and did not question the fact that the promised training was never given. Despite this lack of knowledge, there is evidence that petitioner prescribed Quaalude to virtually every patient he saw at the Center. Petitioner's testimony contained inconsistencies and was evasive; hence, it was certainly within the discretion of the Board to refuse to accept the credibility of some of his proffered explanations and testimony (see, Matter of Melone v State of New York Educ. Dept., 115 AD2d 854, 855). We conclude that a review of the record reveals that the findings were overwhelmingly supported by the evidence.

We are unpersuaded by petitioner's argument that it was error to hold a joint hearing. Separate hearings would have required duplication (as many as seven times) of much of the evidence submitted at the hearing. Each physician was given an opportunity to present extensive testimony on his own behalf and, in this case, the Board's findings are supported by citations to petitioner's own testimony and evidence relevant to petitioner. Consequently, petitioner has failed to demonstrate that the joint hearing resulted in substantial prejudice to him (see, Business Council v Cooney, 102 AD2d 1001, 1002).

Finally, petitioner contends that the penalty imposed was excessive. In light of the danger posed to the public by petitioner's activities, we cannot say that the sanction imposed is so disproportionate to the offense as to be shocking to one's sense of fairness (see, Matter of Rubin v Board of Regents, 101 AD2d 970, 971).

Determination confirmed, and petition dismissed, with costs.

---

* Since the Board's findings were accepted by the Commissioner of Health, the Regents Review Committee, respondent State Board of Regents and the Commissioner of Education, we will merely refer to the Board with regard to findings.

Main, J. P., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.